CRAIN, J.
| ¾Walter Cole appeals a final decision of the Civil Service Commission upholding his dismissal from a permanent status position of Horticultural Attendant with the Office of State Buildings (OSB) in the Division of Administration (DOA). We affirm.
FACTS
As a Horticultural Attendant, Cole’s typical duties included trimming hedges, cutting grass, pulling weeds, and similar manual labor associated with grounds keeping. After reporting for work on the morning of August 21, 2012, Cole gave his foreman, Kirston Young, a note from a physician stating that Cole was “experiencing problems when stooping and bending in the course of his work duties” and requesting that Cole “refrain from any duties that involve stooping and bending over.” The physician’s note was routed to the Horticultural Manager, Mathilde Myers, who called Cole and Young to her office for a meeting to address the matter. The meét-ing was also attended by Glenn Frazier, the Assistant Director of OSB; and Henry Turner, another foreman in the horticultural division.
Cole was advised that his inability to bend and stoop prevented him from performing his job, so he would be placed on sick leave until he got a full release from his physician. The management personnel assured Cole that he had plenty of available leave, that he would be paid for his time off, and that he was eligible for leave under the Family Medical Leave Act (FMLA),[2] which would protect his employment status while he was out. They then informed Cole that he needed to go home.
Despite management’s assurances, Cole said he was concerned that his absence would be considered “unscheduled” and might adversely affect his employment. He began insisting that the staff find something for him to do that |sday. Frazier explained that OSB did not have any light duty jobs but again assured Cole that *183 he had plenty of available leave and that his employment would be protected under FMLA. Cole was handed a folder containing the FMLA forms, and Frazier attempted to conclude the meeting by stating, “Walter, you know, we’re going to put you on sick leave, so, you know, you need to go home, and then when you get your doctor to release you, you can come back.” Cole refused to accept the forms and, according to the others in attendance, became confrontational, throwing the paperwork on the desk and telling Frazier something to the effect of “I’ll be back at you.” Cole then steadfastly refused to leave the premises and demanded that he “get something in writing.”
For the next 20 to 30 minutes, Frazier, in the presence of the others in attendance, continued his attempts to explain to Cole that he had been provided with the necessary forms for FMLA leave and that he would receive paid sick leave while he was out. When Cole persisted in refusing to leave, Frazier warned him that officers with the Department of Public Safety would be called to remove him from the premises. Cole responded, “Do what you have to do.”
Lieutenant Charles Jarrell, Jr. with the Department of Public Safety, Police Capitol Detail, was dispatched to the scene and, after speaking with Frazier and another OSB executive, located Cole in the employee lunchroom. Lieutenant Jarrell discussed the situation with Cole and told him, “I don’t want to put you in jail.” Cole responded, “Do what you have to do, I am not going to leave.” Lieutenant Jarrell then placed Cole under arrest and escorted him from the building.
On October 1, 2012, Myers formally notified Cole that his conduct on August 21, 2012, was insubordinate and had impaired the functioning of OSB. Myers also pointed out two prior instances of insubordination by Cole in 2012, one that resulted in a two day suspension, and a second that ended with a reprimand. | ¿Finding that Cole’s recent actions demonstrated a continued disregard of management’s instructions, Myers advised that she was recommending that Cole’s employment be terminated. In his response, Cole continued to insist that he could have performed some of his job tasks on the day in question, denied that he threw the folder of FMLA documents at anyone, and claimed that he was not informed that his leave would be designated as FMLA leave. Cole did not deny that he refused to leave the premises as directed by management of OSB. By letter dated November 1, 2012, Myers informed Cole that the appointing authority had authorized the termination of his employment effective that date.
Cole appealed his dismissal to the Civil Service Commission, asserting that he had not received adequate notice of the termination of his employment, denying the allegations of the termination letter, and contending that the disciplinary action was unwarranted, unjustified, and excessive. A hearing was held before a Civil Service referee. The referee ruled in favor of the DOA, finding:
DOA proved that Mr. Cole violated supervisory directives by failing to leave the workplace on August 21, 2012, and was thereby clearly insubordinate. Pri- or to the incident at issue in this appeal, DOA had suspended Mr. Cole for two days and given him a letter of reprimand for previous acts of insubordination. Based on the foregoing reasons, I conclude that DOA proved legal cause for discipline and that the penalty imposed, dismissal, is commensurate with the offense.
Cole filed an application for review of the referee’s decision, which the Commission denied, making the referee’s decision the *184 final decision of the Commission. See La. Const, art. X, § 12(A); Civil Service Rule 13.36(g). This appeal followed.
DISCUSSION
Civil service laws and rules establish a system under which “non-policy forming” public employees are selected on the basis of merit and can be discharged only for insubordination, incompetency, (or improper conduct. Mathieu v. New Orleans Public Library, 09-2746 (La.10/19/10), 50 So.3d 1259, 1262; Paulin v. Department of Health and Hospitals, Office of Behavioral Health, 13-1916 (La.App. 1 Cir. 6/6/14), 146 So.3d 264, 267. Fundamental to the purpose of the civil service merit system are protection of employees and the ability to discipline employees for legal cause that impairs the efficiency of the public service. Mathieu, 50 So.3d at 1262. Just as great an injustice may arise from suffering the continuance of incompetent or insubordinate classified civil service employees in their positions as from wrongfully terminating the permanently classified civil service employee. Mathieu, 50 So.3d at 1262.
An employee with permanent status may be disciplined only for cause expressed in writing. La, Const, art. X, § 8(A). Cause for dismissal includes conduct prejudicial to the public service involved or detrimental to its efficient operation. Mathieu, 50 So.3d at 1262; Paulin, 146 So.3d at 267-68. The appointing authority bears the burden of proving such conduct by a preponderance of the evidence, meaning that the evidence as a whole must show the fact sought to be proven as more probable than not. Paulin, 146 So.3d at 268; Pike v. Department of Revenue, Office of Alcohol and Tobacco Control, 13-0522 (La.App. 1 Cir. 12/27/13), 2013 WL 7122608, p. 1, writ denied, 14-0202 (La.4/4/14), 135 So.3d 1183. Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the “efficient operation” of the public service. Bannister v. Department of Streets, 95-0404 (La.1/16/96), 666 So.2d 641, 647.
In civil service disciplinary cases, the factual conclusions of the referee and Commission are subject to the manifest error standard of review. Paulin, 146 So.3d at 268; see also Mathieu, 50 So.3d at 1262; Lowery v. Department of Health and Hospitals, 13-0811 (La.App. 1 Cir, 3/12/14), 142 So.3d 1016, 1021. Thus, the factual determinations will be reversed only if the appellate court finds that a reasonable basis does not exist for the Commission’s finding and further that the | ^record establishes the finding is clearly wrong. Paulin, 146 So.3d at 268. In evaluating the Commission’s determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, .the court should not modify the Commission’s order unless it is arbitrary, capricious, or characterized by abuse of discretion. McGee v. Department of Transportation and Development, 99-2628 (La.App. 1 Cir. 12/22/00), 774 So.2d 1280, 1282, writ denied, 01-0232 (La.3/23/01), 788 So.2d 432. An arbitrary conclusion is one that disregards evidence or the proper weight thereof; and a capricious conclusion is when there is no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. Paulin, 146 So.3d at 268; Burst v. Board of Commissioners, Port of New Orleans, 93-2069 (La.App. 1 Cir. 10/7/94), 646 So.2d 955, 958. Each case must be decided on its own facts. Reviewing courts should not second guess the appointing authority’s decision, but only intervene when de *185 cisions are arbitrary and capricious or characterized by an abuse of discretion. Paulin, 146 So.3d at 268.
On appeal, Cole contends that the referee erred in concluding that OSB does not have a “light duty” policy because the DOA “failed to present a written policy that states that it does not have a light duty policy.” In essence, this argument maintains that the only way DOA could prove that it had no policy of assigning “light duty” tasks to injured or ill employees in Cole’s position was to produce a written policy expressly providing that no such policy existed. Absent any such express declaration, Cole contends OSB’s actions in directing him to leave the premises were “illegal,” so his refusal to leave was appropriate.[3]
Cole cites no authority nor are we aware of any authority requiring a public agency to adopt a written policy expressly declaring what policies the agency does | qnot have. An exhaustive list of all such “un-adopted” polices would be an arduous, if not impossible, task. Furthermore, the absence of any light duty policy at OSB was not materially contested at the hearing. Other than his vague testimony, Cole presented no evidence suggesting that OSB had previously assigned light duty tasks to similarly situated employees, and multiple representatives of OSB confirmed that the office does not have a policy of offering light duty assignments to injured or ill employees because of the physical nature of the work. We find no manifest error in the referee’s finding that OSB did not have a “light duty” policy.
We also find no evidence in the record supporting Cole’s general contention that his refusal to leave the premises was justified. An employee must follow an order unless it calls upon him to do something illegal, immoral, unethical, or in dereliction of her duties. Paulin, 146 So.3d at 269; see also Department of Corrections, Louisiana State Penitentiary v. Cage, 418 So.2d 3, 5 (La.App. 1 Cir.), writ denied, 422 So.2d 164 (La.1982). Refusing to obey orders constitutes insubordination and is an action which, by its very nature, impairs the efficient operation of public service, thereby justifying disciplinary action. Paulin, 146 So.3d at 269; see also Ben v. Housing Authority of New Orleans, 03-1664 (La.App. 1 Cir. 5/14/04), 879 So.2d 803, 807; Ennis v. Department of Public Safety and Corrections, Dixon Correctional Institute, 558 So.2d 617, 623-24 (La.App. 1 Cir.1990). It is undisputed that Cole’s superiors instructed him to leave the premises, and he adamantly refused to do so, ultimately requiring the intervention of law enforcement personnel to remove him in handcuffs. Cole’s insubordination was neither necessary nor warranted. If his concern over the classification of his absence had materialized, Cole could have properly addressed the matter through an available grievance procedure. Accordingly, we find no merit in Cole’s contention that his insubordination was justified.
| sIn his final assignment of error, Cole asserts that the referee erred because the record shows that a lesser penalty was available that would not have resulted in the termination of his employment. This assignment of error was not briefed and is thus considered abandoned. See Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4B(4); J. Reed Constructors, Inc. v. Roofing Supply Group, L.L.C., 12-2136 (La.App. 1 Cir. 11/1/13), 135 So.3d 752, *186 754, writ denied, 14-1031 (La.9/12/14), 148 So.3d 931.
CONCLUSION
For the reasons set forth herein, the decision of the Civil‘Service Commission is affirmed. .All costs of this appeal are assessed to Walter Cole.
AFFIRMED.

. See 29 U.S.C.A. 2611-54.

. In a related assignment of error, Cole asserts that the referee erred because “the law requires that an employee be given written notice of policies upon which to perform his or her duty.” We considered both of these assignments of error together.